IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| CITIZENS TELECOMMUNICATIONS CO. OF CALIFORNIA, INC., *et al*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 1:07-cv-1265 |
| MCI COMMUNICATIONS SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the Court is Defendant MCI Communications Services, Inc.'s Motion to Dismiss (Dkt. no. 7). Upon careful consideration of the motion and the parties' memoranda in support and in opposition, the Court finds that the Plaintiffs have no standing to bring Count III of the First Amended Complaint[1], and in the alternative, that under the doctrine of primary jurisdiction, the Federal Communications Commission ("FCC") is the proper venue for adjudication of this matter. As such, Defendant's Motion to Dismiss is GRANTED with respect to Count III of the First Amended Complaint.[2]

---

[1] By agreement of the parties, while the initial Motion to Dismiss was in regard to the initial Complaint, the First Amended Complaint makes no substantive changes in regard to Count III, and therefore will be incorporated by reference herein.

[2] Because the parties have withdrawn, by mutual agreement, the portion of the Motion to Dismiss which refers to interstate access charges originated by consumers using voice over Internet Protocol, the Court need not reach a decision regarding the merits of this claim.

**I.      Background**

Plaintiffs Citizens Telecommunications Company of California Inc., *et al.* ( "Citizens Telecommunications") are comprised of local exchange carriers ("LECs"), which provide local network facilities to long distance carriers, in order to process long-distance phone calls.  In this case, Citizens Telecommunications alleges that the Defendant MCI Communication Services, Inc. d/b/a Verizon Business Services f/k/a MCI WORLDCOM Communications, Inc. ("Verizon") failed to pay legally required access charges[3] for its use of Plaintiffs' local network facilities in originating, receiving, and completing long-distance calls.  Citizens Telecommunications further alleges that Verizon has wrongfully withheld a significant portion of the payments billed and due for the access services that it has provided.  Plaintiffs seek to recover these access charges from Verizon, together with late charges in accordance with the Plaintiffs' tariffs.

Specifically, in Count III, the Plaintiffs seek to recover from Verizon under a theory of unjust enrichment based on Verizon's alleged underpayment of contributions to the Universal Service Fund ("USF").  In accordance with Congressional directive under the Telecommunications Act of 1996, the FCC established the USF to which every interstate telecommunications provider must "contribute on the basis of its projected collected interstate and international end-user telecommunications revenues, net of projected contributions."  47

---

[3]Access charges are the fees that long-distance carriers, such as Verizon, must pay local exchange carriers to defray the costs associated with the use of local exchange facilities for originating and terminating long-distance calls.  These switched access charges are established and mandated by federal and state regulations and tariffs, and depend on whether the call is interstate or intrastate.

C.F.R. §54.706(b); *see also* 47 U.S.C. §254(b)(3). The purpose of the USF is to ensure that low income consumers have access to telecommunications services that are comparable to services provided in more urban areas at similar rates. *See* 47 U.S.C. §254(b)(3). All telecommunications carriers that provide service between states, including long distance companies, local telephone, and wireless companies are required to contribute on an equitable and nondiscriminatory basis to the USF. To administer the USF, the FCC created the Universal Service Administrative Company ("USAC"). On a quarterly basis, the USAC recommends a "contribution factor," which is a percentage of expected interstate revenue for each telecommunication provider. To allow the USAC to make an informed judgment as to the contribution factor, telecommunications providers must make a quarterly "good faith estimate" of expected revenues from interstate telecommunications service "based on the contributor's policies and procedures." 47 C.F.R. §54.711(a). By law, however, it is actually the FCC that determines USF contributions, as it is not bound by the USAC's recommendation or by the providers' own projections of demand. *Id*. at §54.709(a)(3). It is rather in the discretion of the FCC to "set projections of demand and administrative expenses at amounts the Commission determines will serve the public interest at any time within the fourteen-day period following release of the Commission's public notice" of the proposed contribution factor recommended by the USAC. *Id*. In this case, Plaintiffs allege that they have been injured as a result of Verizon's alleged underreporting of its interstate revenues. In particular, Citizens Telecommunications alleges that Verizon's failure to pay its requisite percentage of revenues from interstate calling card services into the USF has in turn caused the contributions of other affected carriers, like the Plaintiffs, to increase accordingly.

Pursuant to Fed. R. Civ. P. 12(b)(6), Verizon has moved to dismiss Count III the First Amended Complaint, which seeks damages for Verizon's alleged failure to make required contributions to the USF as administered by the FCC. In support of its Motion to Dismiss, Verizon asserts both that Citizens Telecommunications lacks standing to seek recovery of USF contributions from Verizon, and in the alternative, that the resolution of a such a claim is within the primary jurisdiction of the FCC. The Court agrees and finds that Citizens Telecommunications lacks the standing necessary to seek recovery of USF contributions against Verizon, because the injury alleged is not fairly traceable to the action of Verizon, but rather the intervening acts of the FCC. Further, the Court finds that were Citizens Telecommunications to have standing to bring this claim, the FCC is the appropriate venue for resolution of the claim under the doctrine of primary jurisdiction.

## II. Discussion

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A complaint need only have "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

In considering a motion to dismiss under Rule 12(b)(6), the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the

plaintiff." *Martin*, 980 F.2d at 952. Still, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-5. Further, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### A. Standing

Article III of the United States Constitution limits federal courts to resolve actual cases and controversies. *Finlator v. Powers*, 902 F.2d. 1158, 1160 (4th Cir. 1990). To satisfy Article III requirements, a plaintiff must have standing, which at a minimum requires that the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or hypothetical." *Lujan v. Defenders of Wildlife*, 505 U.S. 555, 560 (1992) (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly trace[able] to the challenged action of the defendant, and not...th[e] result [of] the independent action of some third party not before the court." *Id*. Finally, it must be likely that the injury would be redressed upon a favorable decision by the court. *Id*.

In addressing the causation inquiry in particular, when the plaintiff himself is not the object of the government action that he or she challenges, while it is not precluded, standing is "substantially more difficult" to establish. *Id*. At 562. This is because when causation depends on the "unfettered choices made by independent actors not before the courts whose exercise of broad and legitimate discretion the court cannot presume either to control or predict," the plaintiff has the burden of producing facts sufficient to demonstrate that choices have been made

in such a way to produce the requisite causation. *Id*.

In this case, the FCC, who is not a party to the litigation, has the sole discretion under the authority of federal law and pursuant regulations to set the contribution factor for Verizon and other telecommunications providers. *See* 47 U.S.C. §254(d); 47 C.F.R. §54.709. This FCC discretion is independent of the revenue projections which Verizon provides to the USAC in order for it to make its recommendations for contributions. *Id*. Specifically, the FCC has the sole authority to approve the recommendations of the USAC, taking into account demand for support and administrative expenses. 47 C.F.R. §54.709(a)(2). In addition, the FCC may determine that a carrier or class of carriers are exempt from contribution if their contributions would be *de minimus*. *See* 47 U.S.C. §254(d).

Accordingly, statute and federal regulations dictate that the determination of various telecommunication providers' contributions to the USF is within the sole discretion of the FCC. It is of no matter for standing analysis whether or not this task is in function largely ministerial or whether the FCC actually exercises such discretion regularly. The injury complained of in this action does not meet Article III standing requirements, because there is no direct causation. While Verizon's alleged underreporting of revenue could have contributed to the injury alleged, the actual injury is the "result [of] the independent of action of some third party not before the court." *Lujan,* 505 U.S. at 560. Namely, because the FCC has the discretion to set forth contribution factors in the public interest, the injury complained of by the Plaintiffs is the result of the actions of the FCC through its exercising, or not exercising, such discretion. Accordingly, the Plaintiffs do not have standing to bring Count III of the First Amended Complaint, which seeks to recover from Verizon for its alleged underpayment into the USF.

### B. Primary Jurisdiction

Although Count III is no longer before the Court having found that the Plaintiffs have no standing to raise such a claim, the Court finds it appropriate to address Defendant's arguments regarding primary jurisdiction. Under the doctrine of primary jurisdiction, when a claim before a court "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body," judicial proceedings must be suspended "pending referral of such issues to the administrative body for its views." *United Sates v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956); *accord Advamtel, LLC v. Sprint Communications* Co., 105 F. Supp. 2d 476, 480 (E.D. Va. 2000). The doctrine of primary jurisdiction "coordinates administrative and judicial decision making by taking advantage of agency expertise and referring issues of fact not within the conventional expertise of judges or cases which require the exercise of administrative discretion." *Environmental Tech. Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996). While there is no fixed formula for determining when the doctrine of primary jurisdiction applies, courts have generally focused on four factors including: (i) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (ii) whether the question at issue is particularly within the agency's discretion; (iii) whether there exists a substantial danger of inconsistent rulings; and (iv) whether a prior application has been made to the agency. *Advamtel*, 105 F. Supp. 2d at 480 (citations omitted).

In Count III of the First Amended Complaint, Citizens Telecommunications contends that if Verizon had not underreported interstate revenue to the USAC, then the FCC would have set

7

the contribution factor for all carriers at a lower level. In applying the four factor test to aid in the determination of whether the doctrine of primary jurisdiction applies, it is clear that the doctrine indeed applies to Count III of the First Amended Complaint as alleged by Citizens Telecommunications. Therefore, were the Court to have found that the Plaintiffs had standing, such a claim would be properly referred to the FCC.

A claim, such as the one before the court, should be properly referred to the FCC when it requires the resolution of issues that have been placed within the special competence of an administrative body. *Western Pac. R.R. Co.*, 352 U.S. at 63-64. In this case, the determination of a telecommunication providers' contribution factor is solely within the purview of the FCC, under the relevant statute and regulatory authority. *See* 47 U.S.C. §254(d); 47 C.F.R. §54.709. Plaintiffs ask the Court to substitute its own discretion for that of the FCC and determine what would have been the appropriate contribution factor for Verizon. Such a determination requires the exercise of the agency's technical expertise as well as policy judgment. Plaintiffs argue that the FCC's task is far more ministerial and that they rarely use their statutory discretion; nonetheless, because the FCC has such discretion to make determinations in the public interest, it would be inappropriate for the Court to substitute its own judgment. The Court fails to find any prior precedent which supports the contention that it would be appropriate for the Court to make such a determination. In fact, the Court finds that each of the four factors used by courts to determine when primary jurisdiction applies weighs in favor of applying the doctrine of primary jurisdiction under the facts of this case. Accordingly, if the Plaintiffs had standing to raise Count III of the First Amended Complaint, the Court would refer such a claim to the FCC as the appropriate venue to make such a determination under the doctrine of primary jurisdiction.

### III.     Conclusion

For all the reasons aforementioned, the Defendant's Motion to Dismiss is GRANTED in regard to Count III of the First Amended Complaint.  An appropriate order has previously been issued.

ENTERED this 9th day of April, 2008.

___/s/___
Liam O'Grady
United States District Judge

Alexandria, Virginia